# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **BRADLEY J. LYONS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:10-CV-75** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **CORE SYSTEMS, L.L.C.,** | : | **Magistrate Judge Preston Deavers** |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This employment discrimination matter is before the Court on the Parties' cross-motions for summary judgment (Docs. 12 & 25). For the reasons that follow, the Parties' motions are **GRANTED** in part and **DENIED** in part.

### II. BACKGROUND

#### A. Factual History

##### *1. Lyons's Employment History*

Defendant Core Systems, L.L.C. manufactures plastic components for other industries at two facilities, one in Painesville, Ohio and one in Mt. Gilead, Ohio. Core Systems hired Plaintiff Bradley Lyons on August 17, 1976, to work at its Mt. Gilead facility. Core Systems laid Lyons off but rehired him on May 1, 1992. By 2009, Lyons had become the Tooling Supervisor for Mt. Gilead, which involved managing and coordinating the tooling operations at that facility.

On January 23, 2009, Keith Wittler, the Tooling Manager, called Lyons into his office and told him that he was being laid off. Lyons's termination became official that April.

*2. Lyons's Absenteeism*

Lyons was a salaried employee subject to an attendance policy. On December 19, 2006, Steve Mangrum, the plant manager, and Pam Morrison, the human resources manager, called Lyons in for a meeting about his chronic absenteeism. According to Core Systems' meeting notes, Mangrum told Lyons that the fact that Lyons had missed days in nearly every month of 2006, including eight absences on top of the absences that Lyons credited against his vacation and sick time, was unacceptable. Lyons said that that his absences were for various health-related reasons, including problems with his leg or generally not feeling well.

In 2007, Lyons had thirty-three absences; in 2008, he had twenty-nine. Fourteen of the twenty-nine absences in 2008 were unexcused. To address Lyons's continued attendance problems, Mangrum, Morrison, and Wittler had another meeting with Lyons on September 24, 2008. Wittler presented Lyons with a letter that read in part as follows:

> [Y]ou need to know that we depend on you and it is crucial that you come to work every day. You hold a very important position at Core Systems. Your attendance is in jeopardy. If you were an hourly associate, you would have been terminated.
>
> You will be required to request vacation time 24 (twenty-four) hours in advance and bring a doctors excuse in for future absences. You also need to know that if you have 3 (three) more unexcused absences before the end of 2008; you will be reprimanded up to and including termination.
>
> We are asking you to communicate with us. Keep the company informed of situations in your life that will effect [sic] your not being at work. We are not

asking to know your business, but to help if we can. We do not want to lose an

employee that has the longevity and expertise as you have.

Wittler acknowledged that they knew Lyons had health problems, and Morrison told Lyons that

if he communicated with them more, they might learn that some of the things for which he was

missing work would be covered under the Family Medical Leave Act.

Lyons told them that he had a blood clot in his leg and had to make frequent visits to his

vascular doctor. At his deposition, Lyons stated that he believed the request to keep Core

Systems informed was unfair as he had been keeping Morrison abreast of the problems with his

leg all along.

### 3. Lyons's Medical Problems

Lyons claims to be disabled due to three conditions: (1) reflex sympathetic dystrophy

("RSD"), which prevented him from making "any use of [his] left hand"; (2) blood clots in his

left leg, which made climbing steps or standing for long periods painful; and (3) a back injury.

Lyons's blood clots developed as a result of a burn he sustained at work that caused blood

poisoning. Lyons also suffers from high blood pressure and diabetes.

### 4. Bill Loebbaka's Management

Bill Loebbaka became the President of Core Systems in mid-2007. Lyons has presented

the testimony of several Core Systems employees that Loebbaka was particularly concerned with

the high and increasing costs of its employee health benefits. Mangrum reports that he repeatedly

heard Loebbka complain about these costs in general and the "out of line" costs at Mt. Gilead in

particular. Harold Randolph, a Logistics Manager, also affirmed that Loebbaka said "that health

care costs and workers' compensation costs would be the downfall of the company." Randolph

stated that Morrison and Mangrum shared Loebbaka's preoccupation with these costs, and Mt. Gilead's disproportionately high expenses, frequently discussing them at management meetings.

Randolph further recalls that Mangrum and Morrison would look at Randolph and Lyons when complaining about health care costs. Randolph, like Lyons, had a number of health conditions. He interpreted these looks to mean that Mangrum and Morrison "thought the health care costs were high, at least in part, because [Lyons and Randolph] had serious health conditions and workers' compensation claims."

*5. The Health Fair*

To earn a 3% reduction in its insurance premiums, Core Systems sponsored a health fair that included a medical screening of its employees on January 19, 2009. Nationwide Better Health, an organization not affiliated with Core Systems, ran the fair. Lyons has testified that the fair was mandatory for Core Systems employees. This testimony is supported by that of Mangrum and Randolph, who say that Morrison and Loebbaka told him participation was mandatory.  Randolph, moreover, alleges that Morrison and Mangrum told him his choice was between attending the fair and "the door."

Lyons participated in the fair, at which Nationwide measured his weight, his body mass index, his blood pressure, and asked him questions concerning his medical history and that of his wife. Lyons shared his health problems with Nationwide and that his wife had skin cancer in 2007.

Before participating in the fair, Lyons signed an Authorization to Release Confidential Medical Heal Information and Waiver that stated that Nationwide would not share his health information with Core Systems. The only information Nationwide would give to Core Systems was statistical data not tied to any particular employee.

*6. The Reduction in Force*

By 2007, Core Systems had become financially unstable. To increase profits, Core Systems hired Horizon Advisors, LLC, a "turnaround specialist," in December of 2007 to conduct day-to-day management of Core Systems. Although Horizon's initial efforts had begun to be successful, Core Systems' troubles worsened after the financial crash in 2008.

Core Systems determined that it needed to make personnel cuts. Because its hourly employees were shielded from termination by their membership in a union, Core Systems cut from its salaried employees. It considered the facts that many of its other employees were skilled in tooling work and that the majority of tooling work occurred in the Painesville facility. Hence it concluded that Lyons' Tooling Supervisor position was one that could be consolidated with other positions.

Core Systems laid off a number of employees other than Lyons. Around the same time as Lyons's termination, Core Systems fired eleven other employees. Overall, between July 21, 2008, and March 26, 2009, Core Systems fired fifty-two employees from the Mt. Gilead facility alone. Additionally, the salaried employees that kept their jobs saw their compensation reduced.

Lyons was aware of the financial problems that Core Systems was experiencing before the layoffs began. A letter sent by Loebbaka on January 26, 2009, to all Core Systems employees, summarized the company's troubles: "Our sales have declined over 30% from prior periods and our results from last year. Our sales have declined from almost $6 million a month to a little less than $4 million a month." Nor was the forecast an improvement: the projected sales for 2009 included a $7.4 million drop.

**B. Procedural History**

Lyons filed a complaint on January 26, 2010, in which he alleged the following claims: (1) interference with and retaliation against his exercise of his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (2) wrongful termination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*; (3) associational discrimination in violation of the ADA; and (4) wrongful termination in violation of Ohio Revised Code § 4112.02(A) (Doc. 2). Lyons is seeking reinstatement, backpay, compensatory damages, and fees and costs.

Core Systems filed its Motion for Summary Judgment on February 8, 2011 (Doc. 12).[1] Because Core Systems filed this motion before discovery had closed, the Court stayed the motion until the close of discovery (Doc. 14). Lyons filed his Motion for Summary Judgment on May 28, 2011 (Doc. 25).[2] These motions are now ripe for decision.

**III. STANDARD OF REVIEW**

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

---

[1] The Parties filed lengthy memoranda in support of their arguments. While they technically complied with the local rules, the Court notes that Local Rule 7.2(a)(3), which states that supportive memoranda "should not exceed twenty (20) pages," establishes that memoranda over twenty pages should rarely be filed.

[2] The Parties have engaged in some last minute discovery disputes regarding the motions for summary judgment. On July 22, 2011, Lyons moved for a discovery order and for leave to file a supplemental report to address discovery that he alleged Core Systems had deliberately withheld (Doc. 36). The Court granted that motion on August 9, 2011 (Doc. 44). Lyons subsequently alleged in a motion to enforce that Core Systems continued to disobey the Court's discovery order (Doc. 47), but the Court denied that motion on September 1, 2011 (Doc. 49).

considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co*., 8 F.3d 335, 339–40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id.*

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). The Court "must evaluate each party's motion on its own merits" and may not grant "summary judgment in favor of either party . . . if disputes remain as to material facts." *Id.*

## IV. LAW AND ANALYSIS

### A. Evidentiary Issues

Before the Court can address the merits of the Parties' motions, it must resolve two evidentiary matters that Core Systems has raised. First, Core Systems contends that Lyons's affidavit, which he filed as an attachment to his opposition to Core Systems' motion for summary judgment, must be stricken (Doc. 22-29). Second, Core Systems contends that exhibits 29–34 of Lyons's motion for summary judgment (Docs. 25-1 through 25-6) and exhibits 1–28 of Lyons's opposition to Core Systems' motion for summary judgment (Docs. 22-4 through 22-23, 22-27 through 22-28, & 28-1 through 28-31) must also be stricken.

### 1.   Lyons's Affidavit

Core Systems argues that Lyons' affidavit should be stricken under the rule that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). The Sixth Circuit in *Aerel, S.R.L. v. PCC Airfoils, L.L.C.* set forth the standard governing the application of this rule:

> [A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue. A useful starting point for this inquiry is the nonexhaustive list of factors articulated by the Tenth Circuit in *Franks*, where the court noted that the existence of a sham fact issue turns on whether the affiant was

cross-examined during his earlier testimony, whether the affiant had access to the

pertinent evidence at the time of his earlier testimony or whether the affidavit was

based on newly discovered evidence, and whether the earlier testimony reflects

confusion [that] the affidavit attempts to explain.

448 F.3d 899, 908–09 (6th Cir. 2006) (citations and quotations omitted). This standard is a fact-

bound one, and it may be the case that some of the claims in the affidavit are in direct

contradiction with Lyons's prior deposition testimony and some are not. Where the Court's

decision on the merits turns on a fact presented only in Lyons's affidavit, the Court will rule at

that time whether that particular portion of the affidavit should be stricken.

*2. Unsupported Exhibits*

Core Systems argues that the exhibits identified above should be stricken because they

are not properly authenticated. "To be considered on summary judgment, documents must be

authenticated by and attached to an affidavit made on personal knowledge . . . ." *Stuart v. GMC*,

217 F.3d 621, 636 n.20 (8th Cir. 2000); *see also Winston v. Cargill, Inc.*, 699 F. Supp. 2d 1056,

1060 (W.D. Tenn. 2010) (citing *Stuart*); *AT&T Corp. v. Overdrive, Inc.*, No. 1:05-CV-1904,

2006 U.S. Dist. LEXIS 84836, *9–10 (N.D. Ohio Nov. 21, 2006) (same).

The Court has reviewed these exhibits and concurs with Core Systems that they are not

authenticated by affidavit. The Court accordingly will not consider facts contained only in Docs.

25-1 through 25-6, 22-4 through 22-23, 22-27 through 22-28, and 28-1 through 28-31.

**B. FMLA**

Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain,

or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29

U.S.C. § 2615(a)(1). The Sixth Circuit recognizes "two distinct theories of recovery under the

9

FMLA: (1) the 'entitlement or interference' theory arising under 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising under 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Entitlement/interference claims are based on prescriptive rights, which establish entitlements to employees and set floors for employer conduct, while retaliation claims are based on proscriptive rights, which prohibit disparate employer conduct with regard to employees taking leave. *Taylor v. The Union Inst.*, 30 F. App'x 443, 452 (6th Cir. 2002).

Lyons has brought claims under both theories, and the Parties have each moved for summary judgment as to both.

*1. Interference Theory*

In order for a plaintiff to succeed on his FMLA interference claim under § 2615(a)(1), he has the burden of establishing the following facts, in existence at the time his claim arose: (1) he was an eligible employee; (2) the defendant was an employer; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave the defendant notice of his intention to take leave; and (5) the defendant used the leave against the plaintiff in an unlawful manner, as provided in either the statute or regulations. *See Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003) (formulating the fifth element as follows: "the employer denied the employee FMLA benefits to which he was entitled"). Each element must be proved by a preponderance of the evidence. *Wysong*, 503 F.3d at 447 (citing *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005)).

Core Systems argues, first, that it did not have notice of Lyons's need for FMLA leave prior to November 2008, and, second, that after November 2008, it did not deny Lyons a benefit to which he was entitled because it granted his request for leave.

10

First, the Court agrees with Core Systems as to the absences prior to November 2008, but not for the reason Core Systems propounds. Rather, even assuming that Core Systems was on notice, Lyons has not shown that Core Systems interfered with his rights. An employer has only unlawfully used an employee's leave against him if the employer fails to provide the employee with his twelve-week leave or to reinstate the employee after he takes a medical leave. *See Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). Neither of these scenarios occurred here. The undisputed evidence shows that Lyons took a number of days off of work and that Core Systems did not prevent him from doing so or from returning to work after periods of leave. Lyons has not made out his *prima facie* case for this time period.

Second, the Court finds Core Systems' argument regarding interference after November 2008 to be without merit. The FMLA obligates employers to "notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances." 29 C.F.R. § 852.300(d)(1). Lyons requested FMLA leave on November 11, 2008, via a Certification of Health Care Provider.[3] Core Systems granted the request for leave beginning on November 11, 2008, and continuing for an indeterminate period of time, by filling out a form dated November 18, 2008. Lyons testified, however, in both his deposition and his affidavit, that he did not receive the approval until December 2008. In the meantime, thinking his leave had not been approved, he did not meet with his doctor as planned

---

[3] The Court draws these facts from Lyons's affidavit, which, as discussed above, Core Systems contends the Court should not consider. As to this portion of the affidavit (paragraphs 165–74), the Court finds that there are no direct contradictions between the affidavit and Lyons's deposition testimony. The affidavit and the relevant exhibits supplement rather than contradict Lyons's testimony, and there is nothing to indicate that the affidavit is in these portions creates a sham issue of fact. *See Aerel*, 448 F.3d at 909. The Court will therefore not strike these portions of Lyons's affidavit.

in November. The evidence in the record shows that Core Systems granted Lyons's request for FMLA leave five business days[4] to one month after Lyons made it, depending on whether Lyons's statement that he did not receive the approval until December is credited.

If Lyons is believed, Core Systems denied Lyons a benefit to which he was entitled— notice of approval or disapproval of his request for leave within five days—and Lyons has proven his *prima facie* case for an interference claim. If Lyons is disbelieved, Core Systems did not deny Lyons a benefit to which he was entitled, and Lyons has not proven his *prima facie* case. On the basis of this genuine dispute of material fact, the Court **DENIES** both Parties' motions for summary judgment on Lyons's FMLA interference claim for events occurring in November 2008 or later.

### 2. Retaliation Theory

Under the retaliation theory, the plaintiff must show that the defendant discriminated against him because he took FMLA leave or that the defendant "'use[d] the taking of FMLA leave as a negative factor in [an] employment action[].'" *Arban*, 345 F.3d at 403 (quoting 29 C.F.R. § 825.220(c)); *see also Mitchell v. County of Wayne*, 337 F. App'x 526, 534 (6th Cir. 2009) ("A retaliation theory of recovery under the FMLA is different from an interference theory because under a retaliation theory, the intent of the employer matters."). The plaintiff may prove his claim for retaliatory discharge using either direct or circumstantial evidence.

In the absence of direct evidence, courts apply a three-part burden-shifting framework to the plaintiff's claim. *Id*. Under this framework, the plaintiff must first make out a *prima facie* case by demonstrating the following: (1) that he engaged in a protected activity under the FMLA; (2) that the defendant knew he had exercised his FMLA rights; (3) that the plaintiff

---

[4] The Court takes judicial notice that November 11, 2008, was a Tuesday; November 18, 2008, was therefore the fifth business day after the request for leave was submitted.

experienced an adverse employment action; and (4) that there was a casual connection between the protected activity and the adverse action. *Id.* If the plaintiff is able to demonstrate a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action. *Id.* The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the reason offered by the defendant was pretextual and intended to mask actual retaliation. *Id.*

Core Systems argues that Lyons cannot establish his *prima facie* case of retaliation because there is no evidence of the fourth element, causation. Even if Lyons can meet his *prima facie* case, Core Systems asserts it has a legitimate non-discriminatory reason for Lyons's termination—the company-wide layoffs—that Lyons cannot show to be mere pretext.

### *i. Causation*

Lyons argues that the temporal proximity between his request for leave and his layoff and the fact that his termination was based at least in part on his FMLA-protected absences are evidence of a causal connection between a protected activity and his retaliatory discharge.

To demonstrate causation, Lyons "must present evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (6th Cir. 1982); *see also Brown v. Chase Brass & Copper Co.*, 14 F. App'x 482, 489 (6th Cir. 2001) (quoting *Cohen*). Temporal proximity alone may, in some circumstances, be sufficient to prove a plaintiff's *prima facie* case: "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (collecting cases). In other words, in

the totality of the circumstances, "extremely close temporal proximity could permit an inference of retaliatory motive, but . . . often evidence in addition to temporal proximity is required to permit the inference." *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 400 (6th Cir. 2010) (construing *Mickey*).

Two months passed between Lyons's formal request for FMLA leave and his termination. It also occurred around the same time as a surgery that Lyons needed in the beginning of 2009, a fact that Lyons shared with Core Systems during the meeting on September 24, 2008.[5] This is sufficient to meet Lyons's *prima facie* case. *See Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding causal connection in FMLA case where defendant terminated plaintiff "three months after [plaintiff] requested FMLA leave, and the very day that she was scheduled to return to work"). Core Systems' repeated warnings to Lyons about his absences, too, suggest that they were at least a part of the reason why Lyons was chosen for the layoffs. *See Cavin*, 346 F.3d at 726 ("'[A] termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA.'") (quoting *Barnett v. Revere Smelting & Refining Corp.*, 67 F. Supp. 2d 378, 388 (S.D.N.Y. 1999)). All told, the evidence is "sufficient to raise the inference" that Core Systems fired Lyons for his exercise of his FMLA rights, and Core Systems is not entitled to summary judgment on this ground.

*ii. Legitimate, Non-Retaliatory Reason*

---

[5] The fact that Lyons told Core Systems about his need for surgery in the beginning of 2009 is contained only within Lyons's affidavit. On this point, the Court concludes that the evidence is neither in direct opposition to his deposition testimony nor an attempt to create a sham issue of fact. *See Aerel,* 448 F.3d at 909. The Court will therefore consider it on summary judgment.

Core Systems has produced evidence that its financial situation was worsening in 2008 and 2009 and that it therefore laid off over fifty employees in a short period of time. *See Taylor v. Union Inst.*, 30 F. App'x 443, 453 (6th Cir. 2002) (finding that a reduction in force was a legitimate, non-discriminatory reason for the discharge). Core Systems has, moreover, offered evidence that Lyons's position was redundant, satisfying its burden to explain why he "'was chosen as the object of the reduction in force.'" *Bell v. Prefix, Inc*., 321 F. App'x 423, 428 (6th Cir. 2009) (quoting *Taylor v. Union Inst.,* 30 F. App'x 443, 448 (6th Cir. 2002) (per curiam)). Lyons concedes that this evidence suffices to shift the burden back to Lyons to show that Core Systems' financial struggles are a pretext for its discriminatory discharge of Lyons.

### *iii. Pretext*

The plaintiff can establish pretext by showing one of three things: (1) the reason has no basis in fact; (2) the proffered reason did not motivate the discharge; or (3) the reason was insufficient to warrant termination. *Wharton v. Groman-Rupp Co.*, 309 F. App'x 990, 997 (6th Cir. 2009); *Heady v. United States Enrichment Corp.*, 146 F. App'x 766, 770–71 (6th Cir. 2005). Lyons must only "show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him . . . was wrongfully based on" his exercise of his FMLA rights. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 843 (1st Cir. 1993); *see also Holobaugh v. Tennessee, State Bd. of Regents*, No. 93-5625, 1994 U.S. App. LEXIS 14418, *7 (6th Cir. June 8, 1994) (citing *LeBlanc*); *McIlwain v. Ohio Dep't of Mental Health*, 409 F. Supp. 2d 908, 917 (N.D. Ohio 2006) (same).

Lyon raises a number of arguments regarding pretext: (1) Core Systems has produced no documentation supporting Loebakka's claim that Core Systems determined that Lyons's position could be consolidated with other positions; (2) Core Systems failed to provide documentation of

an objective process used to identify who would be subject to the reduction-in-force ("RIF"); (3) Core Systems failed to provide documentation of its financial system for the period coinciding with his layoff; (4) management's comments about the high cost of health care; (5) Core Systems' preoccupation with decreasing health care costs; (6) Core Systems targeted employees with disabilities or with disabled family members for layoffs; (7) Core Systems treated Lyons differently from other employees by requiring him to clock in and out; and (8) Core Systems fired Lyons because of his FMLA-protected absences.[6]

The Court finds some of Lyons's arguments to be substantiated but all of his arguments to be beside the point. As discussed infra, Lyons has enough evidence to survive summary judgment on a claim that Core Systems targeted him because he was an expensive disabled employee. This question, however, is distinct from the one in a FMLA retaliation claim: whether Core Systems targeted him because he exercised his FMLA rights. On that question, Lyons's only evidence is that Core Systems had warned him about his absenteeism. This is enough for Lyons's *prima facie* case but not enough to overcome Core Systems' evidence that it fired Lyons as part of a legitimate RIF. The Court therefore **GRANTS** Core Systems' motion for summary judgment on Lyons's retaliation claim.

### C. ADA and R.C. § 4112: Discrimination

The ADA[7] prohibits any "covered entity" from "discriminate[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To recover under the ADA, a plaintiff must show three elements: "(1) that he or she is

---

[6] Lyons also relies on evidence that the Court has ruled it cannot consider: that Core Systems tracked health care costs and that Core Systems was financially strong. The Court has not included Lyons's argument based on this evidence in its analysis.

[7] Because the elements of a claim for unlawful discrimination under the ADA and R.C. § 4112 are the same, *Wobler v. Toledo Stamping & Mfg. Co.*, 125 F.3d 856, n.1 (6th Cir. 1997), the Court will analyze these claims together.

16

an individual with a disability; (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discharged solely by reason of the disability." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (reconciling *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) with *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)); *see also Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 454 (6th Cir. 2004) (affirming that the "sole reason" test remains binding law in the Sixth Circuit).

The Court applies a "burden-shifting framework [that] seeks to uncover" the existence of the above three elements of a plaintiff's claim. *See Whitfield*, 639 F.3d at 259. A plaintiff must first make out a *prima facie* case that includes five prongs: "1) he or she is disabled; 2) otherwise qualified for the job, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of his or her disability; and 5) after rejection or termination the position remained open, or the disabled individual was replaced." *Monette*, 90 F.3d at 1185 (citations and quotations omitted); *see also Whitfield*, 639 F.3d 259 (clarifying that "*Monette* states the proper test" for a plaintiff's "*prima facie* case of employment discrimination under the ADA"). If the plaintiff carries this burden, the "defendant must then offer a legitimate explanation for its action." *Monette*, 90 F.3d at 1186. Once the defendant has done so, "the plaintiff must introduce evidence showing that the proffered explanation is pretextual." *Id.* at 1186–87.

Lyons contends he is entitled to summary judgment on this claim because he has met all of its elements and because making the health fair mandatory independently violated the ADA. Core Systems challenges Lyons' ADA and Ohio discrimination claims on the second and fifth elements of his *prima facie* case[8] and contests Lyons's assertions regarding the health fair.

---

[8] Core Systems does not concede that Lyons is disabled but does not argue that issue at this time.

*1. Qualification for the Position (Second Element)*

Core Systems argues that Lyons was not qualified for his position due to his excessive number of absences.

A plaintiff is only protected by the ADA if he is a "qualified individual," defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Attendance can be an "essential function." *See Brenneman v. MedCentral Health Sys*., 366 F.3d 412, 418–19 (6th Cir. Ohio 2004) (collecting cases on ADA and absenteeism and holding that employee, "as a matter of law, would not have been qualified to perform the essential functions of [his] position due to his excessive absenteeism"); *Cantrell v. Nissan N. Am. Inc*., 145 F. App'x 99, 104–05 (6th Cir. 2005) (affirming summary judgment for defendant-employer because plaintiff-employee was unqualified for the position due to chronic attendance problems); *Jovanovic v. In-Sink-Erator*, 201 F.3d 894, 899 (7th Cir. 2000) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting . . . .").

The fatal flaw in Core Systems' argument is its generality—Core Systems does not point to specific evidence that Lyons's absences prevented him from performing the essential functions of his position, just that attendance usually is important. In *Brenneman*, in contrast, there was testimony that regular attendance was an essential function of the employee's position and that the employee's excessive absences "placed a great strain on" the employer. 366 F.3d at 420.  No such evidence exists in the case *sub judice*. Core Systems' argument that the sheer number of absences was so excessive as to render him disqualified for his position would, if adopted, place on the Court the task of drawing a line between absenteeism that is acceptable and absenteeism that is not. It is not the Court's provenance to turn a fact-specific business

18

determination into a rule about the number of times an employee may be absent before becoming *per se* unqualified for his position.

Core Systems argues that to require it to produce evidence that Lyons was not qualified for his position would be to shift improperly the burden of production in Lyons's *prima facie* case from Lyons to Core Systems. The Court disagrees. Lyons has already put forth evidence that his absences did not make him unqualified for the position: Core Systems concedes that he possesses the technical skills necessary for the position, and Core Systems did not terminate him until several years after he began having irregular attendance.[9] The lengthy gap between the beginning of Lyons's attendance issues and his termination suggests that Core Systems did not view his absences as having reached a point that rendered him incapable of performing the essential functions of his position.

In short, without evidence in the record to undermine Lyons's showing that he was qualified for the position, the Court must **DENY** Core Systems' motion on this ground.

### 2. Whether Lyons Was Replaced (Fifth Element)

Core Systems next argues that there is no evidence that the Tooling Supervisor position either was filled or remained open while Core Systems sought a suitable replacement after Core Systems fired Lyons. Lyons retorts that he does not need to show that he was replaced.

When the Sixth Circuit established that the fifth element of a *prima facie* ADA discrimination case was that "after rejection or termination the position remained open, or the disabled individual was replaced," it noted that "the precise characterization of the fifth prong of the test will sometimes vary depending upon the factual scenario confronting the court." *Monette*, 90 F.3d at 1185, 1186 n.11. *Accord McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

---

[9] Indeed, Core Systems denies that its termination decision *ever* had anything to do with Lyons's absences.

802 n.13 (1973) ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). Cases in which the defendant's legitimate explanation for the adverse action is a RIF are of the type requiring modification of that element: "When considering a discrimination claim in the context of a reduction-in-force, this court has modified the 'replacement' element of the prima facie case, allowing a plaintiff to substitute 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Kvintus v. R.L. Polk & Co.*, No. 98-1532, 1999 U.S. App. LEXIS 27995, *14 (6th Cir. Oct. 25, 1999) (quoting *Barnes v. GenCorp Inc*., 896 F.2d 1457, 1465 (6th Cir. 1990)); *see also Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 350 (6th Cir. 1998) (holding that replacement prong is "modified" in RIF cases). *But see Trout v. Elec. Data Sys. Corp*., 151 F. App'x 390, 400 (6th Cir. 2005) (applying unmodified fifth element to ADA claim involving RIF). Evidence that a "comparable non-protected person was treated better" usually suffices to meet this modified element. *Ercegovich*, 154 F.3d at 350.

The above cases show that, contrary to Core Systems' assertions, Lyons does not have to show *both* that he was replaced *and* direct, circumstantial, or statistical evidence that his disability was a factor in his termination. Rather, the replacement element is modified to reflect the fact that an employee terminated as part of a RIF will not be able to show replacement. To carry his burden of raising an inference of discriminatory animus, the employee may *instead* show other evidence of discriminatory intent.

Core Systems argues that there is no such other evidence. Lyons counters with five types of evidence to show that Lyons's disability was the cause of his discharge: (1) management's comments about the high cost of health care; (2) Core Systems' preoccupation with decreasing

20

health care costs; (3) Core Systems targeted employees with disabilities or with disabled family members for layoffs; (4) Core Systems treated Lyons differently from other employees by requiring him to clock in and out; and (5) Core Systems fired Lyons because of his health-related absences.

The Court finds Lyons's second contention to be without merit: most or all employers—and much of the public, as well—worry about the rising costs of healthcare, and many rely on programs such as the health fair to incentivize preventative care and to reduce its insurance premiums. Such general and legitimate actions do not create an inference of pretext.

Lyons's fifth argument fails, as well, because it assumes the fact he is trying to prove: that Core Systems fired him on the ground that he took and requested ADA-protected leave.

The Court finds Lyons's third contention persuasive. Lyons points to evidence that Core Systems targeted unhealthy employees in the RIF. Core Systems laid Lyons off on the same day it let Eric Hall and Harold Randolph go. Hall had a wife with serious medical problems requiring him to miss work, and Randolph had serious health conditions of his own about which Core Systems knew. Within the next two months, Core Systems also laid off Tracy Turner, who had no serious medical problems; Terri Thomas, who had a history of medically related absences and a mother with serious health problems; and Steve Mangrum, who had serious conditions and had required medical leave in the past. By Lyons's count, then, five of the six salaried employees Core Systems laid off had serious health conditions or family members with one. Moreover, only Tracy Turner, who had no health conditions, was rehired.

Core Systems counts differently. It laid off eleven employees around the time it laid Lyons off, and it fired fifty-two in an eight-month span. Lyons acknowledged at his deposition that the majority of those laid off did *not* have health issues. As Core Systems admitted at oral

argument, however, the majority of the fifty-two laid-off employees were laid off in accordance with union rules. Only six of the laid-off employees were salaried employees, the category that included Lyons, and Core Systems only had discretion in its termination decisions with respect to the salaried employees. That Core Systems exercised its discretion by laying off five of the six salaried employees and only rehiring the one employee without health problems supports an inference of discrimination.

The Court finds Lyons's first argument convincing, as well. The Sixth Circuit has previously found that managers' derogatory comments about a protected class create an inference of pretext. *See Vincent v. Brewer Co*., 514 F.3d 489, 497–98 (6th Cir. 2007) (finding management's comments about women, including that women did not belong in the work force, was evidence of pretext for gender discrimination claim). In *Ercegovich*, the Sixth Circuit found that repeated discriminatory remarks made by a company vice president supported an inference of pretext. 154 F.3d at 354–56. It noted that although "a direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant." *Id*. at 355. Similarly, in *Trujillo v. PacifiCorp*, the Tenth Circuit considered evidence of an employer's general concerns about the rising costs of health care as a factor supporting an inference that the employer fired two employees whose child had an expensive health condition. 524 F.3d 1149, 1156 (10th Cir. 2008).

The evidence in the case *sub judice* shows that Loebakka, Morrison, and Mangrum repeatedly complained about too-high insurance rates, particularly at the Mt. Gilead facility. These comments could be interpreted to be nothing more than expressions of frustration at rising

costs and falling revenues. They could also be interpreted as a motive to target unhealthy employees in the RIF.

Such an interpretation is more plausible in light of Randolph's testimony that Mangrum and Morrison stated on multiple occasions that Lyons's absences were going to cost him his job. Randolph further testifies that Mangrum and Morrison knew that Lyons's absences were medically related. Core Systems additionally required Lyons to clock in and out, treating him differently from all other salaried employees.

Thus, Lyons has offered evidence showing that Core Systems was deeply concerned with health care costs and that Core Systems had identified Lyons as a particularly unhealthy, and necessarily expensive, employee. Lyons has also shown that Core Systems used its discretionary termination decisions to fire six salaried employees, five of whom have, or have family members with, a serious health condition. A jury could (but would not be required to) conclude from this evidence that Core Systems selected Lyons for the RIF because of his disability. Lyons has met his *prima facie* burden.

### 3. Legitimate Reason and Pretext

Core Systems' proffered legitimate reason for firing Lyons is the RIF. Lyons in turn retorts, as he did in his FMLA retaliation claim, that the totality of the circumstances, including the evidence he offered in his *prima facie* case, supports a conclusion that Core Systems fired Lyons because he was disabled. Lyons additionally offers evidence that Core Systems recalled "virtually [all] of the employees [it] laid off in November" and that it was searching for new people for its "more skilled positions."

Evidence produced in support of a *prima facie* case "may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext." *Blair v. Henry Filters, Inc.*, 505

F.3d 517, 533 (6th Cir. 2007). Ultimately, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). In this case, a jury could credit Core Systems' RIF explanation, finding that if Core Systems truly thought Lyons was too expensive, or took too many health-related absences, then it would have terminated him before the RIF. The jury could also find that Core Systems' concern with health care costs, its knowledge that Lyons had serious medical conditions, and the history of bad blood between Core Systems and Lyons regarding his health-related absences reveal the RIF to be but a convenient excuse for the sole reason for Lyons's discharge: that he was an expensive employee with a disability. The Court accordingly **DENIES** both Parties' motions for summary judgment on Lyons's ADA discrimination claim.

### 4. Health Fair

The ADA provides that employers "shall not require a medical examination . . . unless such examination . . . is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). *See also* 29 C.F.R. § 1630.14. Lyons has presented the testimony of Core Systems employees who recall that the health fair was mandatory. Core Systems has presented the testimony of Core Systems management employees who recall that the health fair was voluntary. Because there are genuine disputes of material facts, the Court must **DENY** Lyons's motion for summary judgment on this ground.

### D. ADA and R.C. § 4112: Association Discrimination

The ADA, in addition to prohibiting discrimination against disabled people, also prohibits discrimination against people based on their associations with disabled people. 42 U.S.C. § 12112(b)(4). The ADA's protections for associational discrimination do not require employers to provide reasonable accommodations to non-disabled workers. *See Stansberry v. Air*

24

*Wis. Airlines Corp.*, No. 09-2499, No. 09-72497, 2011 U.S. App. LEXIS 13659, at *9 (6th Cir. 2011) (ruling for the first time in a published opinion on the merits of a claim under the association provision). There are generally three types of associational discrimination claims:

> (1) "expense"; (2) "disability by association"; and  (3) "distraction." The "expense theory covers situations where an employee suffers an adverse employment action because of his or her association with a disabled individual covered under the employer's health plan, which is costly to the employer. The "disability by association" theory encompasses two related situations. Either the employer fears that the employee may contract the disability of the person he or she is associated with (for example the employee's partner is infected with HIV and the employer fears the employee may become infected), or the employee is genetically predisposed to develop a disability that his or her relatives have. The "distraction" theory is based on the employee's being somewhat inattentive at work because of the disability of someone with whom he or she is associated.

*Id.* at *10 (citing *Larimer v. IBM Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)). This list, however, is not exhaustive. *Id.* at *11.

If a plaintiff does not have direct evidence of discrimination, analysis of the claim occurs under the burden shifting scheme of *McDonnell Douglas*, 411 U.S. at 802. *Id.* at *11 (adopting the framework established in *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1084 (10th Cir. 1997)). First, the plaintiff must establish a *prima facie* case of association discrimination. *Den Hartog*, 129 F.3d at 1085. A plaintiff's *prima facie* case contains four elements: "(1) the employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the employee was known to be associated with a disabled individual; and (4) the

adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision." *Stansberry*, 2011 U.S. App. LEXIS 13659, at \*12. Next, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for taking adverse action against the plaintiff. *Den Hartog*, 129 F.2d at 1085. Finally, the burden shifts back to the plaintiff to establish that the nondiscriminatory reason given was actually pretext for unlawful discrimination. *Id.*

Lyons argues that Core Systems fired him because of his wife's numerous health problems. Lyons's claim falls under the "expense" theory: because his wife was on his health plan, Core Systems fired him because her insurance costs were too high. Core Systems challenges the third and fourth elements of Lyons's *prima facie* case.[10]

*1. Knowledge*

Lyons contends that Core Systems had knowledge of Cathy Lyons's disabilities, including a tumor in her sinus cavity, mitrovalve regurgitation, and skin cancer, as early as 2004.[11] At that time, Morrison interviewed Cathy for a position at Core Systems, and Cathy disclosed that she had had a tumor in her sinus cavity requiring surgery in 2003. Cathy continued that a recurrence of the tumor would render her unable to perform the duties of the position for which she was interviewing.

Morrison hired Cathy, but Cathy had to take medical leave in April 2005, within a year of beginning her job. When she took the leave, Cathy presented Morrison with an excuse from her

---

[10] Although Core Systems states that it only challenges the fourth element, it focuses its arguments on whether or when Core Systems knew Lyons's wife had serious health problems. The Court will therefore consider both the third and fourth elements. Furthermore, it should be noted that Core Systems does not concede that Cathy was disabled but does not contest that fact for the purpose of its motion for summary judgment.

[11] Core Systems has not challenged the admission of Cathy's affidavit, from which the facts in this section are drawn.

doctor explaining that the leave was medically-related. Cathy decided not to return from leave because of her poor health.

Cathy's health did not improve, and Lyons missed a number of days of work to care for her. Cathy avers that when Lyons missed work on her behalf, she obtained doctor's notes for him to bring to Core Systems to excuse the absences. In 2007, Lyons requested FMLA leave for Cathy's medical appointments. Core Systems never responded to the requests.

Core Systems focuses on the lack of evidence showing that it had knowledge of the information Lyons disclosed during the health fair. Cathy's testimony, however, provides sufficient independent evidence of Core Systems' knowledge of Cathy's health problems that this dispute is irrelevant for the purposes of this order.

Based on the above facts, a jury could conclude that Core Systems knew Lyons to be associated with a disabled individual.

*2. Determining Factor*

Lyons argues that the Core Systems' management employee's repeated statements about the high cost of health care at Mt. Gilead raise a reasonable inference that Core Systems fired Lyons because his wife's disability was too expensive. This fact may be sufficient to shift the burden to Core Systems to offer a legitimate reason for the termination, but it is not sufficient to show that the RIF was pretext for Core Systems' discrimination on the basis of Lyons's association with Cathy. Cathy had been ill for years, and there is no evidence that her condition worsened around the time of Lyons's termination. *See Stansberry*, 2011 U.S. App. LEXIS 13659, at *13. Moreover, even if Core Systems fired Lyons because of the absences he took to care for Cathy, Lyons's claim would not survive. *See id.* at *16 (holding that it is "irrelevant" in

an associational discrimination claim that an employee's "poor performance at work was likely due to his wife's illness").

Because Lyons has not produced enough evidence from which a reasonable jury could conclude that the RIF was a pretext for associational discrimination, the Court **GRANTS** Core Systems' motion for summary judgment on that count.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Core Systems' Motion for Summary Judgment as to Count I, FMLA interference, for interference occurring before November 2008; as to Count I, FMLA retaliation; and as to Count III, association discrimination (Doc. 12). These claims are **DISMISSED**. The Court **DENIES** the remainder of Core Systems' Motion and **DENIES** Lyons's Motion for Summary Judgment (Doc. 25).

**IT IS SO ORDERED.**

**/s/Algenon L. Marbley___ _____ ___**
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE:** September 21, 2011